**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| AIG SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>Defendant. | Case No. 2:17-cv-01260-APG-NJK<br><br>**ORDER (1) GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING MOTION TO SUPPLEMENT**<br><br>(ECF Nos. 14, 49, 77) |

This is a declaratory relief action in a dispute between a primary insurer, defendant Liberty Mutual Fire Insurance Company, and an excess insurer, plaintiff AIG Specialty Insurance Company. Liberty and AIG both covered the owner and contractors on a construction project at the Palazzo Hotel in Las Vegas. Approximately three years after the project was constructed, maintenance personnel noticed corrosion and deterioration of the steel support framing underneath the Palazzo's pools and spas located on the third and fifth floors of the hotel. An investigation determined that water leaked into the unventilated crawl space beneath the pools creating a moist and humid environment that corroded the steel framing. That framing was not consistent with the project's specifications, which called for cold-formed metal stud framing with G90 galvanization. Instead, the contractors used light-gauge steel finished with a primer that was not properly finished to prevent rusting. The corrosion was so significant that it reduced the load carrying capacity of the framing system, which required replacing the system.

The Palazzo's owner sued the contractors in Nevada state court for the cost of replacement. A substantial barrier to settlement of that action was a dispute between Liberty and AIG about how much each should contribute to the resolution of the claims. Liberty's policy covered $2 million per occurrence, with a $4 million general aggregate limit. Liberty tendered $2 million, contending that the property damage was the result of a single occurrence. AIG, on the

other hand, contended that there were multiple occurrences, thus triggering Liberty's $4 million limit. AIG also asserted that a contractor's rework endorsement that covered the loss at issue was not subject to the $2 million per occurrence limit in Liberty's policy. Because AIG's duty to indemnify is not triggered until Liberty's primary policy is exhausted, AIG contended it had no obligation to contribute funds to settle the lawsuit because the overall damages were greater than $2 million but less than $4 million.

The underlying lawsuit ultimately settled. However, this declaratory relief action between AIG and Liberty remains. The parties have each moved for summary judgment. I deny AIG's motion to the extent it seeks declarations on matters for which there is no justiciable controversy between AIG and Liberty. I grant AIG's motion on the issue of whether Liberty's $2 million per occurrence limit applies to the contractor's rework endorsement. Liberty's policy is ambiguous, and construing the ambiguity against the drafter, the $2 million per occurrence limit does not apply. I therefore deny Liberty's motion for summary judgment.

**I. Legal Standard**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

////

**II. AIG's Motion for Summary Judgment (ECF No. 14)**

AIG moves for summary judgment seeking a variety of declarations. I deny the motion as to the following declarations because there is no justiciable controversy between AIG and Liberty as to these issues:

- That the retained limit amendatory endorsement in the AIG policy may be satisfied only by amounts that would be covered by AIG's policy;
- That the damage to the pool area was not the result of an accident or occurrence within the meaning of AIG's policy because it was the result of deliberate choices not to follow the project plans and to use inappropriate materials; and
- That AIG's policy does not have a contractor's rework endorsement and thus the remedial work was not "property damage" within the meaning of AIG's policy.

These contentions may be a matter of dispute between AIG and its insureds, but Liberty has no interest in whether AIG's policy covers all or part of the claim once Liberty's policy is exhausted. *See Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) ("To determine whether a declaratory judgment action presents a justiciable case or controversy, courts consider whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (quotation omitted)). This is particularly so now that the underlying action has settled. Additionally, the insureds are not parties to this case. Decisions about what AIG's policy covers without the insureds' participation would not be appropriate. *See* Fed. R. Civ. P. 19.

However, the parties have a judiciable dispute over the extent of Liberty's coverage. As to that dispute, AIG moves for a declaratory judgment that the contractor's rework endorsement in Liberty's policy is not subject to the $2 million per occurrence limit because it is a separate insuring agreement that does not require "property damage" or an "occurrence." Liberty did not substantively respond to this portion of AIG's motion. ECF No. 27. Instead, Liberty requests relief under Federal Rule of Civil Procedure 56(d). Liberty argues that even if that endorsement

applies, factual issues remain about whether and what amount of damages are covered. For example, Liberty contends some of the damages might fall within the endorsement's exclusion for cosmetic defects or involve work that was not "structurally unsound" as that term is used in the endorsement.

However, Liberty does not explain what discovery is needed to determine whether the $2 million per occurrence limit applies to the contractor's rework endorsement. While there may be factual disputes about what amount of damages are covered by the endorsement, the resolution of the policy's meaning is not dependent on those fact questions. Either the endorsement is subject to the per-occurrence limit or it is not. Liberty's Rule 56(d) affidavit does not identify any category of discovery related to resolving this question. *See* ECF No. 28. The 56(d) affidavit also does not identify what facts Liberty believes further discovery would show that would preclude judgment on this question. *Id.* Additionally, while Liberty makes several evidentiary objections, it does not object to its own policy as an exhibit. ECF Nos. 17-1, 29.

However, I cannot grant AIG's motion for summary judgment as unopposed. *See Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (stating a court cannot grant summary judgment "by default even if there is a complete failure to respond to the motion" (quoting the 2010 Advisory Committee Notes)). Consequently, I will consider the parties' arguments in relation to Liberty's motion for summary judgment, where Liberty argues that, as a matter of law, the contractor's rework endorsement is subject to the per-occurrence limit because it is part of Coverage A, which requires "property damage" be caused by an "occurrence," and which is limited in Section III by the per-occurrence limit. In sum, the dispute centers around whether the contractor's work endorsement is a separate insuring agreement under Section I Coverage A of Liberty's policy that is not subject to the per-occurrence limit, or whether it is a modification to the coverages and exclusions in Coverage A that is subject to the per-occurrence limit.

"When there are no disputed material facts," the construction of an insurance policy is "purely a question of law." *Allstate Ins. Co. v. Fackett*, 206 P.3d 572, 575 (Nev. 2009) (en banc).

I read the insurance policy "as a whole," and analyze its language "from the perspective of one untrained in law or in the insurance business." *Fourth St. Place v. Travelers Indem. Co.*, 270 P.3d 1235, 1239 (Nev. 2011) (quotations omitted), *as modified on reh'g* (May 23, 2012). I give policy terms "their plain, ordinary and popular connotations." *Id.* (quotation omitted).

If an insurance policy is ambiguous, "it will be construed against the insurer, because the insurer was the drafter of the policy. . . . Whether a term is ambiguous depends on whether it creates reasonable expectations of coverage as drafted." *Id.* (quotation omitted). Consequently, I interpret the policy "to effectuate the reasonable expectations of the insured." *Id.* (quotation omitted). In evaluating whether a policy term is ambiguous, I look at "the policy as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions." *Id.* (quotation omitted).

Section I of the policy is entitled "Coverages." ECF No. 17-1 at 60. Coverage A is entitled "Bodily Injury and Property Damage Liability." *Id.* Coverage A has two subsections: (1) the insuring agreement and (2) the exclusions to that coverage. *Id.* at 60-66. The insuring agreement states as follows:

> 1. Insuring Agreement.
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .
>
>      (1) The amount we will pay for damages is limited as described in Section III – LIMITS OF INSURANCE . . . .
>
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>
>      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and
>
>      (2) The "bodily injury" or "property damage" occurs during the policy period.
>
>    . . . .

*Id.* at 60.[1]  One of the many exclusions states that the policy "does not apply to . . . 'property damage'" to a "particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." *Id.* at 61, 64 (¶ j.6.).

Section III of the policy sets forth the limits for the various coverages. *Id.* at 72.  Section III.2 provides that the general aggregate limit of $4 million is the limit for, among other things, "[d]amages under Coverage A, except damages because of 'bodily injury' or 'property damage' included in the 'products-completed operations hazard." *Id.* at 2, 72.  Section III.3 provides that the products-completed operations aggregate limit of $4 million is the limit for "Coverage A for damages because of 'bodily injury' and 'property damage' included in the 'products-completed operations hazard.'" *Id.* at 2, 72.  Section III.5 provides that subject to III.2 and III.3, the per-occurrence limit of $2 million is the limit for "[d]amages under Coverage A . . . because of all 'bodily injury' and 'property damage' arising out of any one 'occurrence.'" *Id.* at 2, 72.

The policy also includes many endorsements, some of which modify coverage and exclusions in Coverage A.  For example, one endorsement includes an "explanatory note" on SECTION III stating that "'property damage' arising out of continuous or repeated exposure to substantially the same general harmful conditions will be considered as the result of one and the same 'occurrence." *Id.* at 10.  Other endorsements replace exclusions within the policy. *See id.* at 10 (stating exclusion b of Coverage A "is replaced by the following . . . ."), 39 (same for exclusion l), 40 (same for exclusion k).

The policy also includes the contractor's rework endorsement. *Id.* at 41.  This endorsement states:

> The following is added to coverage provided under Coverage A – Bodily Injury and Property Damage Liability:
>
> 1.     Insuring Agreement
>
>      We will pay for sums that you become legally liable to pay for the cost of repair, replacement, alteration or removal of 'your work' or 'your product' that

---

[1] Paragraph 1.b is altered by an endorsement, but not materially for purposes of this case because the endorsement changes the coverage terms for personal injury, not property damage. *See* ECF No. 17-1 at 10.  There is no allegation of personal injury in this case.

Page 6 of 8

|   |   |
|---|---|
| 1 |       a. is structurally unsound; or<br>      b. cannot be put to its intended use |
| 2 | due to defect arising out [of] 'your work' or 'your product' performed during the policy period. |

    2.     Exclusions

         This insurance does not apply to:

         a. "Cosmetic defects"
         b. "Bodily Injury"
         c. "Property damage" to property other than 'your work' or 'your product'
         d. Liability arising from the assumption of liability in a contract or agreement; but this exclusion does not apply to a warranty of fitness of quality of 'your work' or 'your product'
         e. Fines, penalties or liquidated damages
         f. Damage or loss that would be covered by an all risk (special form) property insurance policy including builder's risk or installation floater providing coverage for your financial interest in your building and installation projects and structures.

    3.     Definitions

         As respects coverage provided under this endorsement, the following definition applies:

         "Cosmetic defect" means a superficial or surface defect that does not affect the structural soundness of 'your work' or 'your product'.

*Id.*

Finally, the policy contains a definitions section. *Id.* at 78-83. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 81. "Property damage" is defined as "[p]hysical injury to tangible property . . . ." *Id.* at 82. "Your work" means "[w]ork or operations performed by you or on your behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations." *Id.* at 83.

Liberty's policy is ambiguous as to whether the contractor's rework endorsement is subject to the per occurrence limit. The endorsement states it is "added to coverage" under Coverage A, but it is unclear whether that means it is another form of "property damage" under Coverage A or whether it is an additional form of insurance under Coverage A. The endorsement contains its own insuring agreement that does not define coverage with reference to "property damage," yet the per occurrence limit states that it applies to "property damage." The

endorsement also makes no reference to an "occurrence." It has its own exclusions. And unlike other endorsements, it does not state that it is replacing any other part of the policy within Coverage A that might lead to the conclusion that it is "property damage." The policy thus is ambiguous because it creates the reasonable expectation that the endorsement is not subject to the per occurrence limit. While it may be a reasonable construction of the policy to conclude that the endorsement is just another form of "property damage" that is subject to the per occurrence limit, I must construe ambiguities against the drafter. I therefore grant AIG's motion for a declaration that the contractor's rework endorsement is not subject to the $2 million per occurrence limit.

As I understand the parties' dispute, this ends the matter. I therefore do not consider the parties' arguments about the number of occurrences. However, AIG's complaint contains eighty-four causes of action. ECF No. 1. Consequently, I direct the parties to meet and confer, and to provide a status report within thirty days of the date of this order regarding whether anything remains of this case.

**II. CONCLUSION**

IT IS THEREFORE ORDERED that plaintiff AIG Specialty Insurance Company's motion for summary judgment **(ECF No. 14) is GRANTED in part**. The motion is granted to the extent it seeks a declaratory judgment that the contractor's rework endorsement in defendant Liberty Mutual Fire Insurance Company's policy RG2-691-433239-014 is not subject to the $2 million per occurrence limit in that policy. The motion is denied in all other respects.

IT IS FURTHER ORDERED that defendant Liberty Mutual Fire Insurance Company's motion for summary judgment **(ECF No. 77) is DENIED**.

IT IS FURTHER ORDERED that defendant Liberty Mutual Fire Insurance Company's motion to supplement **(ECF No. 49) is GRANTED**.

IT IS FURTHER ORDERED that the parties shall meet and confer, and on or before April 9, 2018, shall file a joint status report regarding whether anything remains of this case.

DATED this 9th day of March, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE